### Clyde A. King v. Melvin Snide and Guy Bemis

[479 A.2d 752]

No. 82-206

Present: **Hill, Underwood, Peck and Gibson, JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed May 18, 1984

*William M. Dorsch* and *Peter M. Laurence,* Law Clerk (On the Brief), Brattleboro, for Plaintiff-Appellee.

*William M. McCarty,* Brattleboro, for Defendant-Appellant Bemis.

**Underwood, J.** Defendant Bemis appeals a ruling of the Commissioner of Labor and Industry (Commissioner) holding him secondarily liable as the "statutory employer" of the plaintiff, as that term is defined under 21 V.S.A. § 601(3). The ruling ordered him to pay plaintiff the workers' compensation benefits to which he was entitled under the Workers' Compensation Act (Act) as a result of injuries plaintiff suffered while employed by defendant Snide, who was a contract logger for defendant Bemis. The Commissioner, however, held that the plaintiff was not eligible for certain vocational rehabilitation benefits, and plaintiff cross-appealed that provision of the order.

The Commissioner first ruled that Snide, as the direct employer of plaintiff, was primarily liable under the Act and therefore ordered him to pay plaintiff the workers' compen-

sation benefits to which he was entitled; but in the event that his order could not be enforced against Snide, then Bemis as plaintiff's statutory employer was held to be secondarily liable. Although Snide appeared pro se at one of the hearings before the Commissioner, he did not appeal the Commissioner's rulings.

The questions the Commissioner certified to this Court for determination are:

1. Does the evidence support the Commissioner's findings that defendant Bemis was a statutory employer pursuant to 21 V.S.A. § 601(3)?

2. Is the Commissioner correct in his finding of secondary liability of one employer in the event of default by the employer who was found to have primary liability?

3. Is the plaintiff entitled to vocational rehabilitation benefits under 21 V.S.A. § 641(b)?

At oral argument, plaintiff conceded that Bemis was not his common law employer and intimated that Snide, his direct employer, had no workers' compensation insurance coverage at the time of his injury and is judgment proof.

The facts disclose that Bemis once owned a 278 acre woodlot, known as the Bemis lot, in Athens, Vermont, which he gave to his daughter in 1961. Thereafter, Bemis continued to manage the woodlot, and on two occasions prior to 1978 he engaged different persons to log on it. On one of these previous occasions Snide, while employed by a logger, cut on this same woodlot.

In 1978 Snide approached Bemis and inquired as to whether he wanted the Bemis lot logged. Without notifying his daughter, who was living in California, or even seeking her permission, Bemis entered into an oral contract with Snide. At the insistence of Bemis, this oral contract was reduced to writing after the plaintiff's accident.

Plaintiff was hired as a chopper by Snide at $6.00 per hour for a forty to forty-five hour week. Bemis would pay Snide by check each time he received pay for the logs delivered at the mills. Snide in turn would cash the check and pay the plaintiff in cash. On October 25, 1978, while swamping out a skid road ahead of a log skidder, plaintiff seriously injured

his left arm and hand accidentally while operating a chain saw. Plaintiff had inquired of Snide, before starting work for him on two previous jobs, whether he carried workers' compensation insurance and had been assured by him that he did. Plaintiff did not make the same inquiry of Snide before starting work on the Bemis job. Snide did not have workers' compensation insurance coverage for plaintiff on the Bemis logging job.

The Commissioner found that Bemis, and not Snide, was in charge of the logging operations on the Bemis lot. He found that Bemis managed the overall operation of the cutting of the standing timber, directed which trees were to be cut, negotiated the sale of the logs, determined the length and dimension of logs to be marketed and arranged for them to be trucked to various sawmills. The Commissioner found that "[b]ased on the demeanor and credibility of the two witnesses, I find that the defendant Bemis gave reasonably specific instructions to the claimant as to which trees he wished cut and which trees should remain standing." Thus the Commissioner concluded, as a matter of law, that plaintiff was an employee of Snide, and not an independent contractor, and that Bemis was not the plaintiff's employer "in fact" under 21 V.S.A. § 601(14), but rather the "statutory employer" of plaintiff as that term is defined in 21 V.S.A. § 601(3).

The plaintiff has the burden of establishing all facts essential to the right asserted. *Goodwin* v. *Fairbanks, Morse & Co.*, 123 Vt. 161, 166, 184 A.2d 220, 223 (1962). The findings by the Commissioner that Bemis was the statutory employer of the plaintiff and that plaintiff sustained a compensable injury in the course of and arising out of his employment are binding on our Court if legally supported by the evidence. *Norse* v. *Melsur Corp.*, 143 Vt. 241, 243, 465 A.2d 275, 277 (1983). The question is not whether we agree or disagree with the judgment of the Commissioner, *Peabody* v. *Jones & Lamson Machine Co.*, 122 Vt. 431, 433, 176 A.2d 759, 761 (1961); rather we must test the sufficiency of the facts from the point of view favorable to the Commissioner's award if this can reasonably be done. *Moody* v. *Humphrey & Harding, Inc.*, 127 Vt. 52, 54, 238 A.2d 646, 648 (1968).

Applying these principles, we look now to the controlling

statute, 21 V.S.A. § 601(3), which defines a statutory employer as follows:

> "Employer" includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer, and includes the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed. If the employer is insured, "employer" includes his insurer so far as applicable.

Although the Commissioner may formulate policy, we are convinced that his policy decision in this case is unsupportable as an accurate pronouncement of the legislative intent for the enactment of 21 V.S.A. § 601(3). He concluded that small scale logging operations in Vermont are too often informal, dangerous and shady affairs, and that false representations of workers' compensation coverage may be bandied about and relied upon by the innocent and unsuspecting. He was convinced that the statute was designed to prevent just such mischief.

It may very well be true that choppers, skidders, and other laborers working in a logging operation know full well that they would not have their jobs with some self-employed loggers but for their consent to be treated by their bosses as "independent contractors," and therefore outside the ambit of the Workers' Compensation Act. The Commissioner would have us believe that the legislature intended to make every owner or manager of a farm or family woodlot absolutely liable to pay workers' compensation to an injured employee under circumstances such as this case.

 We are convinced, however, that a plain reading of the statute calls for a more limited application. *Montgomery v. Brinver Corp.*, 142 Vt. 461, 463, 457 A.2d 644, 645 (1983). In effect, 21 V.S.A. § 601(3) creates a statutory relationship of employer and employee, where no such relationship existed at common law. The statute presupposes that the owner of the premises or the person who stands in the owner's stead in

his relation to the property "is virtually the proprietor or operator of the business there carried on." *Id.* It seems obvious to us that the legislative intent, gleaned from the language of the statute itself, was to impose liability only upon the owner or proprietor of a regular trade or business conducted on his premises, or the premises of another, where an uninsured independent contractor is carrying out some phase of the owner's or operator's business.

It has generally been held that in order to find a person a statutory employer, the work being carried out by the independent contractor on the owner's or proprietor's premises must be of the type that could have been carried out by employees of the owner or proprietor in the course of his usual trade or business. See generally 1C A. Larson, Workmen's Compensation Law § 49:12, at 9-16–9-23 (1982). Whether the work contracted for by the owner or proprietor with the independent contractor is a part of, or process in, the trade, business or occupation of the owner or proprietor must be decided on a case by case basis. Due consideration must be given to the customary practice of the owner or proprietor in carrying on his usual business and to the terms of the contract between the employee and the independent contractor. 99 C.J.S. *Workmen's Compensation* § 109 (b) (1), at 381.

Bemis, a 78 year old retired grocery store operator, was not carrying on his regular trade or business for pecuniary gain on the Bemis lot, nor was he acting as proprietor of his daughter's regular trade or business on the Bemis lot. To the contrary, he was merely managing his daughter's woodlot, and at the time of plaintiff's accident Bemis was overseeing the logging operation to make sure that the independent logger Snide was living up to the terms of his contract with him.

The Vermont legislature, in enacting the statutory predecessor to 21 V.S.A. § 601 (3), wanted (1) to protect employees of independent contractors and subcontractors who were not financially responsible and (2) to prevent owners of trades or businesses or general contractors from relieving themselves of liability under the Workers' Compensation Act by doing through independent contractors what they would otherwise do through their direct employees. *O'Boyle* v. *Par-*

*ker-Young Co.,* 95 Vt. 58, 112 A. 385 (1921); *Packett* v. *Moretown Creamery Co.,* 91 Vt. 97, 99 A. 638 (1917). See generally 81 Am. Jur. 2d *Workmen's Compensation* § 171; 99 C.J.S. *Workmen's Compensation* § 107(a) and (b).

We think the Commissioner's reliance upon three earlier decisions of our Court for his interpretation of § 601(3) is misplaced. Each of these three cases is distinguishable from the case at hand. In *Packett* v. *Moretown Creamery Co., supra,* the defendant, who was engaged in the creamery business, contracted with a Mr. Flynn, a building contractor, to erect for it a new creamery building. Plaintiff, an employee of Flynn, was injured when a staging upon which he was working collapsed. The Industrial Accident Board found plaintiff to be the employee of Flynn but ordered the defendant Creamery to pay plaintiff workers' compensation, relying upon the statutory predecessor of 21 V.S.A. § 601(3). The defendant Creamery appealed to the Supreme Court.

We held that although plaintiff was the direct employee of Flynn, the defendant Creamery could be held liable by reason of Flynn being an independent contractor if the Creamery was "virtually the proprietor or operator of the business" there carried on. *Packett, supra,* 91 Vt. at 101, 99 A. at 640. We observed, however, that the business "there carried on" was the erection of a building for the ultimate use by the defendant as a creamery and went on to say:

> The true test is, did the work being done pertain to the business, trade or occupation of the Creamery Company, carried on by it for pecuniary gain? If so, the fact that it was being done through the medium of an independent contractor would not relieve the company from liability.

*Id.* We concluded that the defendant Creamery was no more engaged in the business of erecting buildings than Flynn was engaged in the Creamery business and set aside the order of the Industrial Accident Board. *Id.*

In *O'Boyle* v. *Parker-Young Co., supra,* 95 Vt. at 61, 112 A. at 386, we reiterated the test in the *Moretown Creamery* case. The defendant in *O'Boyle* was a manufacturer of various wood products with factories in Vermont and New Hampshire. It had a quantity of lumber stacked in piles on a farm near East

Barnet, Vermont. It contracted with one Joy to haul the lumber to East Barnet and there load it on railroad cars for shipment. Joy had in his employ a teamster named Lowell who, under instructions from Joy, commenced hauling the lumber. While so employed, a bridge over which he was passing collapsed and he received injuries from which he later died. Defendant was not the owner or lessee of the land where the injury occurred nor of the land where the lumber was stacked. The Commissioner dismissed the plaintiff's application for compensation relying upon the precursor of 21 V.S.A. § 601(3). *O'Boyle, supra,* 95 Vt. at 61–62, 112 A. at 387. We concluded that there was no question that defendant carried on the business of manufacturing for pecuniary gain and that Lowell was "employed for the purpose of carrying on the defendant's business, within the meaning of [the statute]." *Id.*

Finally, in *Blake v. American Fork & Hoe Co.,* 99 Vt. 301, 131 A. 844 (1926), defendant was a manufacturer for pecuniary gain of rough wood rake, hoe and shovel handles. A byproduct of this manufacturing process was "edgings" from two to six feet long. Defendant contracted with one Hiram Johnson to purchase the edgings for $2.25 per load. This price included the privilege for Johnson to use defendant's circular saw in its plant and to cut up the edgings into suitable lengths for resale. It was undisputed that the sale of edgings by defendant to Johnson was of a pecuniary gain to defendant. While sawing up these edgings, plaintiff received injuries for which he sought compensation. The Commissioner disallowed plaintiff's claim, and he appealed to the county court.

Plaintiff argued that on the facts of this case the defendant was his statutory employer. The trial court found that Johnson was not a contractor or servant of the defendant at the time plaintiff was injured, but rather that he was engaged in carrying on an independent business of his own. We agreed that Johnson was engaged in carrying on an independent business and affirmed the judgment of the court. *Id.* at 303–04, 131 A. at 845.

Our sympathies in the instant case are with the injured workman who is deprived of his exclusive remedy under 21 V.S.A. § 622 by reason of the crass treatment he received from his direct employer, Snide, who refused to carry

the required insurance, and who, it turns out, is also judgment proof. We realize that the workers' compensation law has benevolent objectives, is remedial in nature and must be liberally construed in favor of the workman. Likewise we agree that no injured worker should be excluded from benefits under the Act unless the law clearly intends such exclusion. *Montgomery* v. *Brinver Corp., supra,* 142 Vt. at 463, 457 A.2d at 646. But courts are limited to the interpretation of statutes to effect the purpose expressed by the legislature which enacted them. If the main thrust of a statute seems unfair or unjust, the remedy must be sought in a legislative change. It cannot be furnished by judicial action in the guise of interpretation. *Herbert* v. *Layman,* 125 Vt. 481, 486, 218 A.2d 706, 710 (1966); *Quinn* v. *Pate,* 124 Vt. 121, 127, 197 A.2d 795, 799 (1964).

 Under the facts and circumstances of the case before us, we hold that the defendant Bemis was not the statutory employer of the plaintiff.

*Certified questions No. 1 and No. 3 are each answered in the negative. Because of our ruling on certified questions No. 1 and No. 3, we are not required to answer certified question No. 2.*