2003 VT 32

## Leslie Edson v. State of Vermont

[830 A.2d 671]

No. 01-446

Present: **Amestoy, C.J., Dooley, Morse,\* Johnson and Skoglund, JJ.**

Opinion Filed March 28, 2003
Motion for Reargument and Correction Denied May 28, 2003

*David R. Edwards* and *Pamela A. Stonier,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellant.

---

\* Justice Morse sat for oral argument but did not participate in this decision.

*William Sorrell,* Attorney General, and *Joseph L. Winn,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Amestoy, C.J.** Plaintiff Leslie Edson, who was injured while working for a trucking firm that had a contract to load and deliver merchandise for the Vermont Department of Liquor Control, appeals the superior court's determination that the State was plaintiff's "statutory employer" within the meaning of 21 V.S.A. § 601(3) and therefore immune from plaintiff's tort suit under 21 V.S.A. § 622 (right to workers' compensation benefits excludes all other rights and remedies against employer). We affirm.

¶ 2. Plaintiff worked for Jerry Nelson, owner of J.E. Nelson Trucking. Nelson entered into a delivery contract with the Department of Liquor Control, which has the statutory duty to "[s]upervise the opening and operation of local agencies for the sale and distribution of spirituous liquors." 7 V.S.A. § 104(2). The contract required Nelson to deliver liquor from the liquor control warehouse in Montpelier to various liquor outlets throughout the state. The contract also required Nelson to provide personnel during the day to load and move trailers at the Montpelier warehouse. Plaintiff performed these loading duties for Nelson.

¶ 3. In August 1995, plaintiff was injured in a trailer owned by Nelson and parked at the State's warehouse loading dock. His hand was crushed between a conveyor belt and a roller that extended into the trailer. Because of his injury, plaintiff was out of work for approximately five weeks. Pursuant to his contract with the State, Nelson provided workers' compensation benefits to plaintiff, including a full salary during his absence and payments for all medical bills related to the accident. In November 1997, plaintiff filed a third-party negligence claim against the State based on the accident.

¶ 4. In July 1998, the State filed a motion for summary judgment, asserting that because it was plaintiff's "statutory employer" within the meaning of § 601(3), plaintiff could not file a third-party tort action against the Department pursuant to 21 V.S.A. § 624(a) (receipt of workers' compensation benefits does not preclude action against liable third party). After initially denying the State's motion, the superior court bifurcated the case and ordered a bench trial to determine if the State was plaintiff's statutory employer. Following the November 2000 bench trial, the court found that plaintiff's job loading trucks was conducted in accordance with the warehouse's specifications, designed to provide for efficient delivery of liquor to multiple destinations, and that plaintiff's work schedule was largely determined by state

employees at the warehouse. Based on these and other findings, the court ruled that the State was plaintiff's statutory employer and, therefore, immune from further tort liability.

¶ 5. Plaintiff appeals, arguing that the evidence does not support either the court's findings or its ultimate conclusion that the State is plaintiff's statutory employer. In making these arguments, plaintiff focuses primarily on the degree to which the State's warehouse supervisor had the authority to control plaintiff's work. Our review of the evidence reveals sufficient support for the court's findings, but, for the reasons explained below, we focus on the language of § 601(3) and our prior case law construing that provision rather than on the degree of control that the State had over plaintiff's work. See *Welch v. Home Two, Inc.*, 172 Vt. 632, 633, 783 A.2d 419, 421 (2001) (mem.) (statutory provisions are all-embracing in determining whether employee-employer relationship is covered by Workers' Compensation Act).

¶ 6. Section 601(3) defines the word "Employer" to include "the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed." As we stated in *King v. Snide*, 144 Vt. 395, 400, 479 A.2d 752, 754 (1984), § 601(3) "creates a statutory relationship of employer and employee, where no such relationship existed at common law." The statute was intended to impose liability for workers' compensation benefits upon business owners who hire independent contractors to carry out some phase of their business. *Id.* at 401, 479 A.2d at 754. The idea was to prevent business owners or general contractors from attempting to avoid liability for workers' compensation benefits by hiring independent contractors to do what they would otherwise have done themselves through their direct employees. *Id.*

¶ 7. Hence, the critical inquiry in determining whether an employer is a "statutory employer" under § 601(3) is whether the type of work being carried out by the independent contractor is the type of work that could have been carried out by the owner's employees as part of the regular course of the business. *Id.* Put another way, the question is whether the work that the owner contracted for "is a part of, or process in, the trade, business or occupation of the owner." *Id.* This inquiry, which is driven by the statutory definition of "employer" contained in § 601(3), has informed and controlled our prior decisions on the subject. For example, in *Packett v. Moretown Creamery Co.*, 91

Vt. 97, 99, 101-02, 99 A. 638, 638-40 (1917), we concluded that the owner of a creamery business was not the statutory employer of an employee injured while working for an independent contractor hired by the creamery owner to construct a building at the creamery.

¶ 8. On the other hand, we came to the opposite conclusion in *O'Boyle v. Parker-Young Co.*, 95 Vt. 58, 112 A. 385 (1921), a case highly analogous to the present one. The defendant in *O'Boyle*, a manufacturer of wood products, hired an independent contractor to haul its lumber and load it on railroad cars for shipment. An employee of the independent contractor died from injuries sustained while working for the independent contractor. This Court acknowledged that the employee had been entirely under the control of the independent contractor, but concluded that this fact was not determinative as to whether the defendant manufacturer was the deceased employee's statutory employer. *Id.* at 60, 112 A. at 386; see *Welch*, 172 Vt. at 634, 783 A.2d at 421 (inquiry in "lent-employee" situation is different from inquiry when statutory employment relationship exists). After stating that the "true test" was whether the work being done by the injured employee pertained to the defendant's business, we concluded that the employee had been employed for the purpose of carrying on the defendant's business within the meaning of the similarly worded statutory predecessor to § 601(3). *O'Boyle*, 95 Vt. at 61-62, 112 A. at 386-87; cf. *Pullig v. Shreveport Packing Co.*, 342 So. 2d 1217, 1218 (La. App. Ct. 1977) (workers' compensation was exclusive remedy of independent contractor's employee, who was injured while performing unloading work that was essential to principal's business).

¶ 9. In the present case, it is plain that plaintiff was injured while engaged in the State's business of distributing liquor to its local agencies. See 7 V.S.A. § 104(2) (commissioner shall supervise operation of local agencies for sale and "distribution" of spiritous liquors); see *Johnson v. Jefferson Nat'l Bank*, 422 S.E.2d 778, 780 n.1 (Va. 1992) (determining whether employee is engaged in business of public entity requires examination of nature of business mandated or authorized by legislative authority). While we recognize that the State's relationship to Nelson Trucking in this case is not identical to the general contractor-subcontractor context at a construction site, nothing in § 601(3) or any of the other provisions of the Workers' Compensation Act suggest that the State should be precluded from obtaining the status of statutory employer in this case.

¶ 10. Nor does it make a difference that Nelson Trucking provided workers' compensation benefits to plaintiff pursuant to its contract

with the State. We need not consider the State's contention that the cost incurred by Nelson Trucking in providing those benefits was built into the hourly rate that the State paid to Nelson. As we stated in *Welch*, 172 Vt. at 635, 783 A.2d at 422, it is the statutory employer's potential liability, not its actual payment of workers' compensation benefits, that makes the employer immune from an injured employee's third-party tort suit. See 6 A. Larson & L. Larson, Larson's Workers' Compensation Law § 111.04[1][b], at 111-23 (2002) (noting marked trend toward granting immunity from injured employees' third-party tort suit to general contractors who are secondarily liable for workers' compensation benefits, even though compensation was actually paid by subcontractor); cf. *Hyon-Su v. Maeda Pacific Corp.*, 905 F.2d 302, 305-06 (9th Cir. 1990) (immunity from tort suit applies to general contractor even where subcontractor has provided workers' compensation benefits to injured employee, given that statute does not expressly limit statutory employers' exclusive liability to situations where subcontractor has failed to procure workers' compensation insurance).

¶ 11. The underlying rationale for making workers' compensation benefits exclusive with respect to statutory employers is that since the employer is "in effect, made the employer for the purposes of the compensation statute, it is obvious that it should enjoy the regular immunity of an employer from third-party suit when the facts are such that it could be made liable for compensation." Larson, *supra*, § 111.04[1][a], at 111-22. Plaintiff provides no persuasive basis for distinguishing his argument from that advanced in *Welch*, 172 Vt. at 632-33, 783 A.2d at 419-20, where we recently concluded that the plaintiff's claim was essentially an attempt to preserve the option of collecting workers' compensation benefits from the subcontractor and, at the same time, suing the general contractor for negligence. Under the facts of the instant case, the State was plaintiff's statutory employer within the meaning of § 601(3) and is therefore immune from plaintiff's negligence claim.

*Affirmed.*